| | |
|---|---|
| 1 | EVAN R. MOSES, CA Bar No. 198099 |
| | evan.moses@ogletree.com |
| 2 | AARON H. COLE, CA Bar No. 236655 |
| | aaron.cole@ogletree.com |
| 3 | MELIS ATALAY, CA Bar No. 301373 |
| | melis.atalay@ogletree.com |
| 4 | OGLETREE, DEAKINS, NASH, |
| | SMOAK & STEWART, P.C. |
| 5 | 400 South Hope Street, Suite 1200 |
| | Los Angeles, CA 90071 |
| 6 | Telephone: 213-239-9800 |
| | Facsimile: 213-239-9045 |
| 7 | |
| 8 | Attorneys for Defendant |
| | HOME DEPOT U.S.A., INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR PIMENTEL, as an individual and on behalf of others similarly situated, | Case No. 2:21-cv- 3051 |
| | **DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
| Plaintiff, | |
| v. | |
| HOME DEPOT U.S.A., INC., a Delaware corporation, and DOES 1-50, inclusive | [Filed concurrently with Declarations of Anne Budniewski and Evan R. Moses, Certification of Interested Entities or Persons, Civil Case Cover Sheet, Notice of Related Cases] |
| Defendants. | Complaint Filed: February 23, 2021 |
| | Trial Date: None |
| | District Judge: Hon. _____ |
| | Courtroom __ _____ |
| | Magistrate Judge: Hon. _____ |
| | Courtroom __ _____ |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF VICTOR PIMENTEL AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT defendant Home Depot U.S.A., Inc. ("Defendant") removes this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

## I. THE STATE COURT ACTION

1. On February 23, 2021, plaintiff Victor Pimentel ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Los Angeles, entitled *Victor Pimentel, as an individual and on behalf of others similarly situated, Plaintiff, vs. Home Depot U.S.A., Inc., a Delaware Corporation and Does 1-50, inclusive, Defendants*, which was assigned case number 21STCV07317 (the "State Court Action"). The Complaint asserts claims for: (1) Failure to Pay Overtime Wages in violation of the California Labor Code §§ 510, 1194, 1198, and the IWC Wage Orders 4, 7, 9 § 3; (2) Failure to Pay Minimum Wages in violation of California Labor Code §§ 204, 510, 1194, 1194.2, 1197, and Wage Order 4-2001; (3) Failure to Furnish Accurate Itemized Wage Statements in Violation of California Labor Code § 226; (4) Failure to Pay Timely Wages in Violation of California Labor Code § 210; (5) Failure to Reimburse for All Necessary Business Expenses in Violation of California Labor Code §§ 2802 and 2804; and (6) Unfair Business Practices in Violation of Business and Professions Code Section 17200, *et seq.*

2. On March 9, 2021, Plaintiff personally served the State Court Action complaint on Defendant's agent for service of process, as well as other documents filed in the State Court Action. Declaration of Evan R. Moses ("Moses Decl.") ¶ 2. A

true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

3.     As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action. True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal. Defendant has not been served with any pleadings, process, or orders besides those attached. Moses Decl., ¶ 3.

4.     Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

5.     <u>This Notice is Timely</u>. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of Complaint's service upon Defendant. 28 U.S.C. § 1446(b).

## II.     JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

6.     This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.     The Size of the Putative Class Exceeds 100

7.     In the Complaint, Plaintiff defines the proposed class as: "all persons who were employed by Defendant as nonexempt employees, in California at any time from four years prior to the date of filing of this action through the date of trial". Ex. A, ¶ 18.

8.     Defendant's employment records show that there are tens of thousands of current and former employees who fall within Plaintiff's proposed class. Plaintiff's class definition includes <u>all individuals</u> who Home Depot employed in a

non-exempt capacity in California since February 23, 2017, regardless of location. Ex. A, ¶ 18. Even if the proposed class were limited only to non-exempt hourly employees who have worked in a Home Depot California retail store or distribution store location between March 1, 2020 and August 22, 2020, there would be at least 43,000 putative class members. Declaration of Anne Budniewski ("Budniewski Decl.") ¶¶ 2-3.

### B. The Parties Are Diverse

9. <u>Citizenship of Defendant</u>. Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

10. At all times on or after the date this action was filed, defendant Home Depot U.S.A., Inc. has been a citizen of the states of Delaware and Georgia. Defendant has its principal place of business in Atlanta, Georgia, as that is the location of its headquarters and where it centrally manages its executive and administrative operations. Budniewski Decl. ¶ 8. In addition, Defendant is incorporated in the State of Delaware. *Id.* at ¶ 7. Defendant is neither incorporated in California, nor does it have a principal place of business in California. *Id.* at ¶¶ 7-8. Accordingly, for purposes of determining diversity, Defendant is regarded as a

citizen of Georgia and Delaware, and not a citizen of California.[1] S*ee also Ottaviano v. Home Depot [U.S.A.], Inc.[]*, 701 F. Supp. 2d 1005, 1007 (N.D. Ill. 2010) (Home Depot "is a Delaware corporation with its principal executive offices located in Atlanta, Georgia"); *Novak v. Home Depot U.S.A., Inc*., 259 F.R.D. 106, 108 (D.N.J. 2009) (Home Depot "is a Delaware corporation with its principal offices located in Georgia").

11. <u>Citizenship of Plaintiff</u>. Plaintiff is a citizen of the State of California.

12. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendant is a citizen of Georgia and Delaware while Plaintiff, a putative class member, is a citizen of California.

## C. **The Amount in Controversy Exceeds an Aggregate of $5,000,000**

13. Plaintiff has not alleged a specific amount in controversy in the Complaint. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

14. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing

---

[1] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

*Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

15. While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to classwide treatment, or that Plaintiff or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

16. As described further below, as well as in the concurrently filed declaration from Anne Budniewski,[2] the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

1. **Defendant's Estimate of the Amount in Controversy**

---

[2] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

17. In determining the amount in controversy to support its Notice of Removal, Defendant relies on a conservative estimate based only on damages sought by Plaintiff in his Complaint as a result of the alleged: (1) unpaid minimum wages for all time spent engaging in pre-shift inspection work off-the-clock; (2) failure to provide accurate wage statements; and (3) failure to timely pay all wages during employment. Because the amounts in controversy for these three claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) failure to pay overtime; (2) failure to reimburse for all necessary business expenses; (3) unfair business practices; and (4) Plaintiff's request for attorney's fees on connection with claims. *See* Ex. A, Prayer For Relief ¶¶ 6, 9, 12 seeking attorney's fees; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes). That said, Defendant reserves the right to do so in opposition to any remand motion.

18. Defendant also based its removal calculations on the fewest number of California non-exempt retail and distribution center employees who worked at any one time between March 1, 2020 and August 22, 2020, rather than the broader class proposed by Plaintiff who have been employed since January 2017. If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

### a) The Amount Placed in Controversy by the Minimum Wage Claim

19. In his Second Cause of Action, Plaintiff alleges that Defendant failed to pay Plaintiff and putative class members all minimum wages due. Ex. A, ¶ 36.

20. Plaintiff specifically alleges that Defendant failed to properly compensate Plaintiff and the putative class members for unspecified off-the-clock pre-shift work, as follows:

> During the Class Period, Defendant had a **consistent policy and/or practice of**…failing to compensate Class Members and Subclass Members[3] with minimum wages.
>
> …
>
> Plaintiff, Class Members, and Subclass Members were subjected to pre-shift inspections off-the-clock work [*sic*] before being allowed to clock in violation of California Labor Code sections 210, 221, 510, and 1194 and the applicable California Industrial Welfare Commission wage order(s). The Defendant failed to compensate Plaintiff, Class Members for all time spent working during this pre-shift inspection.

*Id.* at ¶¶ 4, 14 (emphasis added).

21. Thus, Plaintiff alleges that Defendant had a "consistent policy and/or practice" of failing to compensate Plaintiff and putative class members for time allegedly worked before each and every shift.

22. Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

23. Based on Defendant's records, the fewest number of current and former non-exempt employees who worked either in a retail location or distribution center in California from March 1, 2020 to August 22, 2020 (the "putative class members")

---

[3] Plaintiff defines the minimum wage subclass as "all persons who were employed by Defendant in California as nonexempt employees at any time from four years prior to the date of filing of this action through the date of signed order certifying the class and subjected to pre-shift inspections in which they were not paid." Exh. A ¶ 21.

is 43,000.[4] Budniewski Decl., ¶ 2. The hourly rate of the putative class members was at least $13.00 per hour during this period. *Id.* at ¶ 5.

24. Based on the above facts and allegations contained in Plaintiff's Complaint, Defendant's calculation of Plaintiff's claims for unpaid minimum wages is **$224,047.20.** ($13 x 0.0167 x 1,032,000). The computation of the amount in controversy is based on a conservative calculation that the minimum **43,000** putative class members worked at least **1,032,000** weeks during March 1, 2020 to August 22, 2020 (the "Applicable Period"), that each putative class member earned a regular rate of no less than $**13.00** per hour, and that each putative class member incurred **one (1) minute** of unpaid minimum wage for every week of work.[5] Budniewski Decl., ¶¶ 2-3, 5.

25. The assumption of one minute of unpaid minimum wages per week is conservative. Indeed, an estimate of one hour of unpaid wages for every week of work has been accepted by the federal courts as a reasonable and conservative figure when computing the minimum wage amount in controversy for purposes of removal. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123,

---

[4] Defendant employed up to 48,000 non-exempt current and former employees who worked either in a retail location or distribution center between March 1, 2020 to August 22, 2020. Budniewski Decl., ¶ 6. Nonetheless, for the purposes of its amount in controversy calculations, Defendant conservatively uses 43,000, which is the fewest number of putative class members employed during the Applicable Period.

[5] In light of the Complaint's allegations that Defendant's purported failure to pay minimum wage overtime wages for all time worked was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano v. Shaw Industries, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013).

at *6-7 (C.D. Cal. May 9, 2011) (same). This is especially the case where, as here, a plaintiff fails to provide specific allegations concerning the amount of or frequency with which he worked unpaid hours without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

26. Consequently, the amount placed in controversy by the Minimum Wage Claim is at least **$224,047**.

### b) The Amount Placed in Controversy by the Failure to Provide Accurate Wage Statements

27. In his Third Cause of Action, Plaintiff alleges that "throughout the Class Period [of February 23, 2021 forward], Defendant [*sic*] failed to comply with Labor Code 226(a)" by failing to provide accurate and complete wage statements as reuired by California Labor Code section 226(a). Ex. A. ¶ 43.

28. Plaintiff further alleges the following:

> Defendant knowingly and intentionally provided Plaintiff, Class Members, and Subclass Members with uniform incomplete and inaccurate wage statements. . . . Defendant failed to record the time Plaintiff, Class Members and Subclass Members spent during pre-shift inspections and list the correct amount of gross wages, total number of hours worked, the applicable hourly rates of pay in effect during the pay period and corresponding number of hours worked at each hourly rate.
>
> Due to the fact that Defendants the hours' worth of work that should have been reflected on their wage statements for [*sic*] due to failure to [ay [*sic*] for all hours worked Defendants violated California Labor Code Section 226(a).

Ex. A, ¶¶ 16, 43.

29. Plaintiff seeks penalties pursuant to California Labor Code section 226 for Defendant's allegedly "knowing and intentional" failure to provide accurate wage statements. Ex. A., ¶¶ 16, 43 Prayer for Relief ¶ 7.

30. In turn, Labor Code section 226(e) allows a plaintiff to seek penalties of: $50 per employee for the initial pay period in which a section 226(a) violation occurs; and $100 per employee for each subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee. Cal. Labor Code § 226(e)(1).

31. Defendant's calculation of Plaintiff's claim for non-compliant wage statements is **$2,150,000.00** (43,000 x 1 x $50). The computation of the amount in controversy is based on a conservative calculation that the minimum **43,000** putative class members received just **one** inaccurate pay check during the Applicable Period. Budniewski Decl., ¶¶ 2, 4.

32. An estimate of one wage statement violation is exceptionally reasonable and conservative given the allegations contained in Plaintiff's Complaint. The Complaint contends that Defendant, as a part of its "consistent policy and practice", required Plaintiff and putative class members to perform pre-shift off-the-clock work, that the time spent performing the pre-shift work was compensable, and that Defendant failed to pay for this time. *See* Ex. A, ¶¶ 4, 36-37. Thus, the Complaint alleges that Defendant did not properly compensate Plaintiff and the putative class members for each shift worked during the Relevant Period. Under Plaintiff's theory, this would render each and every wage statement issued during the time period "inaccurate". Ex. A, ¶¶ 16, 42-43.

33. In *Altamirano v. Shaw Industies, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods. 2013 WL 2950600, at *11.

34. Here, given Plaintiff's allegations that the putative class members were not properly compensated *every single shift* throughout the putative class period, Plaintiff claims that each putative class members suffered at least one violation during any given pay period. Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11. Nonetheless, Defendant has assumed **only one wage**

10                                  Case No. 2:21-cv- 3051
DEFENDANT HOME DEPOT U.S.A., INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

46515080_1.docx

**statement violation during the entire putative class period**

35. Consequently, the amount placed in controversy by the Wage Statement Claim is at least **$2,150,000.00**

### c) The Amount Placed in Controversy by the Failure to Timely Pay Wages During Employment

36. In his Fourth Cause of Action, Plaintiff alleges that Defendant violated California Labor Code section 210 by failing to timely pay putative class members all wages due during employment. Ex. A, ¶¶ 44-49.

37. According to the Complaint, Defendant allegedly violated California Labor Code section 210 by requiring Plaintiff and putative class members to engage in "pre-shift inspections off-the-clock." Ex. A, ¶ 14.

38. Plaintiff asserts that as a result of Defendant's alleged failure to timely pay all wages due, he and the putative class are entitled to recovery pursuant to California Labor Code Section 210. Ex. A, Prayer ¶¶ 10, 12.

39. In turn, Section 210 sets forth penalties as follows: $100 per employee for each initial violations; and $200 per employee "for each subsequent violation, or any willful or intentional violation, plus 25 percent of the amount unlawfully withheld". Cal. Labor Code § 210(a)(1)-(2).

40. Defendant's calculation of Plaintiff's claim for failure to timely pay wages during employment is **$4,300,000** (43,000 x $100 x 1). The computation of the amount in controversy is based on a conservative calculation that Defendant failed to timely pay wages to the **43,000** putative class members during just **one** pay period during the Applicable Period. Budniewski Decl., ¶ 2.

41. As with the alleged wage statement violations, an assumed single and unintentional failure to timely pay wages during the Applicable Period is conservative. The Complaint contends Defendant's failure to timely pay all wages is derivative of Defendant's purportedly consistent policy and/or practice to fail to pay for pre-shift compensable work. Ex. A, ¶¶ 4, 14, 44-49. Therefore, according to Plaintiff's theory, Defendant allegedly failed to timely pay putative class members

all wages due for each pay period during the entire Applicable Period. Nonetheless, Defendant has assumed just one such unintentional/non-willful violation per putative class member during the entire Applicable Period.

42.  Consequently, the amount placed in controversy by the Failure to Timely Pay All Wages Claim is at least $**4,300,000**.

### d. Summary of Defendant's Calculations

43.  As described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiff's minimum wage, wage statement, and failure to timely pay wages claims exceed $5,000,000. Indeed, these three claims alone have placed at least $6,674,047.00 in controversy, as follows:

| Claim | Estimated Exposure |
|---|---|
| Minimum Wage Claim | $224,047 |
| Wage Statement Claim | $2,150,000 |
| Failure to Timely Pay All Wages Claim | $4,300,000 |
| **TOTAL** | **$6,674,047** |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

### III.    DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

44.  <u>Venue is Proper</u>. In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Los Angeles is located within the Central District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

45.  In accordance with 28 U.S.C. § 1446(a), copies of all process,

1  pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

2      46.    In accordance with 28 U.S.C. § 1446(d), a copy of this Notice is being
3  served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the
4  Superior Court of California for the County of Los Angeles. Notice of compliance
5  shall be filed promptly afterward with this Court.

6      47.    As required by Federal Rule of Civil Procedure 7.1, Defendant
7  concurrently filed its Certificate of Interested Parties and Disclosure Statement.

8      48.    Finally, in the event this Court has any question regarding the propriety
9  of this Notice of Removal, Defendant requests that the Court issue an Order to Show
10 Cause so that Defendant may have an opportunity to more fully brief the basis for
11 this removal.

12     WHEREFORE, Defendant removes the above-captioned action to the United
13 States District Court for the Central District of California.

16 DATED: April 8, 2021        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

19         By: /s/ Evan R. Moses
           Evan R. Moses
20            Aaron H. Cole
           Melis Atalay

22 Attorneys for Defendant
HOME DEPOT U.S.A., INC.

46515080.1